DECISION
This is an administrative appeal pursuant to G. L. 1956 (1993Reenactment) § 42-35-15 from a written Assent issued by the Coastal Resources Management Council ("CRMC") on May 5, 1997. The assent authorized Tallman and Mack Fish Trap Co. ("Tallman") to construct and maintain a new marina facility at the site of an existing commercial fishing facility in Newport harbor. The new facility consists of two main float systems, one using 194 feet of relocated existing floats and another 187 feet of new floats with seven 30-foot finger floats on the south side. Also, the new facility includes a marine pump-out facility, sanitary and parking facilities and ancillary services. The Assent notes that the site is presently served by a municipal sewer system.
On March 13, 1997, Harbor Realty, L.L.C., and Westwind Marina, L.L.C., (collectively, "Harbor," or simply, "plaintiffs"), gave notice to the CRMC that they objected to the Tallman application. They asserted that the proposed construction would restrict and inhibit the maneuverability of vessels using their facility, which abuts the proposed Tallman project to the south. They also contended that the Tallman plans substantially inaccurately described the distance between their respective facilities. The plaintiffs appeared and presented evidence in opposition to the application at a public hearing of the CRMC on March 25, 1997.
At the hearing the plaintiffs presented evidence in order to show that granting the Tallman application would violate the laws and regulations which the CRMC is chartered to enforce and apply pursuant to § 46-23-6, as amended. The applicant was required by § 46-23-6 (2) (ii) (A) to demonstrate that its proposal would not:
 "(I) Conflict with any resources management plan or program adopted by the council; (II) Make any area unsuitable for any uses or activities to which it is allocated by a resources management plan or program adopted by the council; or (III) Significantly damage the environment of the coastal region."
The plaintiffs asserted at the hearing that approval of the Tallman application would conflict with Section 116.3 of the Coastal Resources Management Program, because the proposed construction would threaten a loss of their property interests in their share of the littoral water in the harbor. The plaintiffs also claimed that granting the application would interfere with public access to the harbor from a city street. In order to decide whether or not the plaintiffs or the public would suffer any such loss, they contended that the CRMC should wait for a judicial determination of the location of the appropriate boundary.
The record clearly demonstrates that the CRMC carefully considered and properly rejected the plaintiff's contention. The CRMC has no jurisdiction to determine claims of private ownership of littoral space in the waters of the state. It does not and cannot locate boundaries between abutting littoral landowners in the Newport harbor. That jurisdiction is exclusively judicial. The parties agree on that conclusion.
Harbor and Tallman do not, however, agree on the location of the line in Newport harbor which separates their respective rights to exclusive use of the water in the harbor on the shore ward side of the Federal navigation project line.[1] SeeNugent, ex rel Collins v. Vallone, 91 R.I. 145, 150-51 (1960). This disagreement is the subject of litigation before this Court in Newport County among these abutting littoral landowners and the City of Newport. Neither Tallman nor Harbor contends that the other has no riparian or littoral rights in the adjacent Newport harbor. Their dispute addresses the location of a boundary which they both concede exists somewhere.
It is clear from the record that none of Tallman's proposed construction lies within the littoral space claimed by Harbor. The CRMC was able to find from the evidence presented to it at a full contested hearing that, even if the riparian boundary claimed by Harbor is correct, the construction proposed by Tallman will not cause any loss of the plaintiffs' property rights. This will be especially true once the plaintiff's themselves conform to an order of the Council to remove an unassented fixed pier from their own facility as pointed out by the CRMC engineer, whose report was adopted and incorporated in the findings of the council.
The area in controversy from the record appears to be what the Council's engineer has labeled a fairway to describe the water space for maneuvering by vessels between the marine fixtures in the abutters' respective littoral space in the harbor. If each abutter were to occupy all of its respective space to the mutual boundary, there would, of course, be no navigable space for vessels to move between the abutters. To avoid that situation, the Council, as well as other regulators with jurisdiction, have recommended or prescribed reasonable setbacks for maritime fixtures from the riparian or littoral lines or boundaries so that vessels can navigate in the fairway between the privately owned fixtures in the harbor without trespassing or interfering with the rights of others.
The Council points out that it has not by plan or regulation required any specific side setback which applies to the water space claimed by the abutters in this case. According to the Council's engineer, the Council requires a "reasonable" setback, allowing for a case-by-case factual determination of what setback is reasonable. The Council considered the impact, if any, which the plaintiffs' claimed location of the riparian boundary would have on navigation in and around the proposed construction by Tallman. It is clear from the record that it found as a fact that the location of the riparian line did not affect that navigation.
It is significant that the City of Newport, which may be claiming a public right by extension of a city street into the harbor space here in controversy, has no objection to the application.
In any event, since the reasonableness of fairway space between proposed and actual, lawful or unlawful, obstacles to navigation is a highly fact-bound determination, this Court cannot substitute its judgment, where there is conflicting evidence, even if it wished to, for that of the Council. §42-35-15 (g); Strafach v. Durfee, 635 A.2d 277, 280 (R.I. 1993). There was substantial evidence before the Council that, even if the plaintiffs are correct in their claim of the location of the riparian line, there was no violation of any resource plan. This Court is constrained to affirm the decision of the Council based on its legitimate fact-finding function. The question of whether or not the applicant and their customers do or will trespass on the plaintiffs' private property will be decided, if anywhere, in the courts of this State.
Accordingly, the grant of the Assent in question by the CRMC to Tallman is affirmed.
The defendants will present a final judgment for entry on notice to the plaintiffs.
[1] For the purposes of this case the Federal navigation project line in Newport harbor is treated as if it is a classic harbor line. The parties seem to agree that these littoral abutters can acquire private navigational rights in the harbor tidewater beyond the extent to which they have already wharfed out into the "great highway of nations." The water and sea-bed beneath the water in question here is probably public property to which private parties may intervene in any event only by leave of the Council. See Nugent ex rel. Collins, supra, 91 R.I, at151.